28 Cal.3d 640 (1980)
620 P.2d 579
169 Cal. Rptr. 918
In re the Marriage of PATRICIA C. and JASON A. SCHIFFMAN.
PATRICIA C. HERDMAN (SCHIFFMAN), Appellant,
v.
JASON A. SCHIFFMAN, Respondent.
Docket No. S.F. 24167.
Supreme Court of California.
December 22, 1980.
*641 COUNSEL
Suzanne J. Chapot, Harriet Parker-Bass, Chapot & Parker-Bass, Curtis A. Freund and Caldecott, Peck, Phillips & Stewart for Appellant.
Harry Bluer for Respondent.
OPINION
NEWMAN, J.
Appellant challenges the portion of an interlocutory decree that changes her child's surname from appellant's birth name (formerly called "maiden name") to the surname of the father and enjoins each parent from any further change without court permission.
We confront a conflict between (1) common law and custom, which have given the father a "primary right" to have his child bear his surname, and (2) the legal and moral obligations of society to respect a *642 mother's rights regarding her child. After appraising the present-day rights of both the mother and father, as pronounced by the Legislature, we conclude that the common law should give way. The trial court premised its ruling on cases and custom that seem outpaced by recent legislative and social developments. (1a) Consequently we rule that, as in custody disputes, quarrels concerning a child's surname should be decided according to the best interests of the child.
Ms. Herdman and Mr. Schiffman were married on January 15, 1977 and separated six months later. She then was four months pregnant. On August 4, 1977, she petitioned for dissolution and noted that there was an unborn child. The child was born on November 2, and Ms. Herdman registered the name on the birth certificate as Aita Marie Herdman. The dissolution was called for trial on February 21, 1978, and essentially was uncontested. The trial was largely devoted to financial issues, and the court granted dissolution and awarded custody of Aita Marie to Ms. Herdman.
The court raised the question of the surname and, for its statement of the law, summarized two Court of Appeal decisions, In re Worms (1967) 252 Cal. App.2d 130 [60 Cal. Rptr. 88] and Montandon v. Montandon (1966) 242 Cal. App.2d 886 [52 Cal. Rptr. 43]. They state the traditional rule that the father has a "primary right" or "protectible interest" in having the minor child bear his surname even after the mother is awarded custody. (Montandon, at pp. 889-892; Worms, at pp. 134-135; see also In re Trower (1968) 260 Cal. App.2d 75, 77 [66 Cal. Rptr. 873]; In re Larson (1947) 81 Cal. App.2d 258, 262 [183 P.2d 688].) Under that rule a change is permitted not to save the child from "inconvenience and embarrassment" but only when there is "substantial" reason to do so, as "`where the father's misconduct has been such as to justify a forfeiture of his rights or where his name is positively deleterious to the child....'" (Worms, at p. 135, quoting from 53 A.L.R.2d 915.)
Relying on Worms and Montandon the trial court ruled that "the child's name is as the law prescribes the surname of the father." (Italics added.) It also ruled that Ms. Herdman "will have no authority" to change her daughter's surname without a court order giving her permission to do so, and it put teeth in the ruling by prescribing that "each party is enjoined from changing the child's surname from Schiffman." Ms. Herdman has appealed.
*643 Should Worms, Montandon, Trower, and Larson be overturned? Nothing in the statutes or Constitutions of the United States or California dictates that a child bear the father's surname. Nor, when parents disagree, is there any command other than in common law that the father's name be preferred.
Surnames have been used at least since the Norman Conquest. In early days they were derived from individual reputations, characteristics, occupations, or places of birth and residence and were not passed from generation to generation. The custom of patrilineal succession seems to have been a response to England's medieval social and legal system, which came to vest all rights of ownership and management of marital property in the husband. "[T]he inheritance of property was often contingent upon an heir's retention of the surname associated with that property." (Note, The Controversy Over Children's Surnames: Familial Autonomy, Equal Protection and the Child's Best Interests (1979) Utah L.Rev. 303, 305 (Utah Note); see Montandon, supra, at p. 890.) The trend toward paternal surnames was accelerated by Henry VIII, who required recordation of legitimate births in the name of the father. Thence the naming of children after the fathers became the custom in England. (Ibid.)
At common law a married woman had little legal identity apart from her husband's. The fiction that husband and wife were one "worked out in reality to mean that ... the one [was] the husband...." (United States v. Yazell (1966) 382 U.S. 341, 361 [15 L.Ed.2d 404, 415, 86 S.Ct. 500] [dis. opn. of Black, J.].) After marriage, custom dictated that the wife give up her surname and assume the husband's. She could no longer contract or litigate in her own name; nor could she manage property or earn money. (Babcock, et al., Sex Discrimination and the Law (1975) pp. 561-563.) Allowing the husband to determine the surname of their offspring was part of that system, wherein he was sole legal representative of the marriage, its property, and its children.
Today those bases for patrimonial control of surnames have virtually disappeared. In the mid-19th century, Married Women's Property Acts returned to wives a separate legal identity. (Id., at p. 593.) Progress toward marital and parental equality has accelerated in recent years. Most important for our purposes are many steps the California Legislature has taken to abolish outmoded distinctions in the rights of spouses and parents. In little more than a decade the statutes drastically have *644 redesigned California's regulation of the family and have eliminated many sex discriminations in parental rights and responsibilities.
The Family Law Act (Civ. Code, § 4000 et seq.), enacted in 1969, effected changes including the adoption of "no-fault" divorce (§ 4506). In 1972 the Legislature deleted the preference accorded mothers in custody disputes involving young children (§ 4600, as added by Stats. 1969, ch. 1608, § 8, p. 3330) and required that custody be awarded to "either parent according to the best interests of the child." (Stats. 1972, ch. 1007, § 1, p. 1855); see In re Marriage of Carney (1979) 24 Cal.3d 725, 730 [157 Cal. Rptr. 383, 598 P.2d 36].) In 1979 the Legislature strengthened section 4600, declaring that it is public policy to encourage divorced parents "to share the rights and responsibilities of child rearing...." The Legislature decreed that, in awarding custody, the trial court "shall not prefer a parent as custodian because of that parent's sex." (§ 4600, subds. (a), (b)(1), as provided by Stats. 1979, ch. 204, §§ 1, 3.)
The 1973 statutes eliminated virtually all sex-specific differences in property rights of spouses. (Ch. 987, p. 1897.) The Legislature repealed the declaration that "The husband is the head of the family" (former § 5101); it provided that "either spouse" rather than "the husband" has the management and control of both the community personal property (§ 5125, subd. (a)) and the community real property (§ 5127); and throughout the Family Law Act it gave the wife the same property rights as the husband by use of the sex-neutral designation of "spouse" (e.g., §§ 5120, 5121).
In 1975 the Legislature adopted the California Uniform Parentage Act. (Stats. 1975, ch. 1244, § 11, p. 3196.) One of its aims is to eliminate legal distinctions between legitimate and illegitimate children. It provides that "As used in this part, `parent and child relationship' means the legal relationship existing between a child and his natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties, and obligations. It includes the mother and child relationship and the father and child relationship." (§ 7001.) Further: "The parent and child relationship extends equally to every child and to every parent, regardless of the marital status of the parents." (§ 7002.) The major premise is that "... regardless of the marital status of the parents, all children and all parents have equal rights with respect to each other." (U. Parentage Act, § 2, Comrs. com.)
*645 Recently the Court of Appeal ruled that the Uniform Parentage Act abrogates common law rules governing parental disputes over children's surnames. (Donald J. v. Evna M. (1978) 81 Cal. App.3d 929 [147 Cal. Rptr. 15].) A child was born out of wedlock, and the mother used her own surname as that of the infant on the birth certificate. Three years later the plaintiff commenced an action to have himself declared the father. He also sought an order directing that the child use his surname and that the birth certificate be corrected. The trial court denied his request, stating that use of a name cannot be prohibited unless fraud is involved.
The Court of Appeal reversed. It first conceded that, if plaintiff was the father, he had some legal right to control his child's surname. It further recognized that at common law the father of a child born in wedlock and the mother of a child born out of wedlock had primary rights to determine the child's surname. (Pp. 936-937.)
However, the court reasoned, "[w]ith the adoption of the California Uniform Parentage Act no longer can it be said that a parent has a primary right or protectible interest in having his or her child bear and maintain that parent's surname merely because of the parent's sex and marital status with respect to that child's other parent at the time the child is born. The controlling consideration in determining whether a change in a child's surname should be ordered against the objection of one of the parents, is the welfare of the child [citations]." (P. 937.) Plaintiff therefore had the right to a determination of surname, based on the legal standard of the child's best interest.
We think that is the correct rule. While neither the Uniform Parentage Act nor other legislation expressly overrules the common law, is there not a compelling implication to that effect? (Cf. Stone, The Common Law in the United States (1936) 50 Harv. L.Rev. 4, 12-16.). The Legislature clearly has articulated the policy that irrational, sex-based differences in marital and parental rights should end and that parental disputes about children should be resolved in accordance with each child's best interest.
It is argued that rules preferring the paternal surname are justified because they formalize long-standing custom, provide a convenient and certain surname system, make official record-keeping simpler, and minimize confusion and difficulty with public and private bureaucracies. *646 (Utah Note, at pp. 307-308.) Moreover, courts and commentators have pointed out that identification with the paternal surname may give the child a healthy sense of family as well as ethnic and religious identity and also maintain her or his rightful link with an absent or noncustodial father. (Id., at pp. 321-325.)
None of those concerns mandates retention of the father's preference. Surnames now may be changed in many situations, and the patrilineal rule has hardly been absolute.[1] Our record-keeping and genealogical systems cope well with the truly significant number of individuals and families that already deviate from the biological-patrilineal norm. We see no reason why these systems cannot accommodate too a fairer standard for resolving disputes between biological parents.
Further, the changing family patterns that are recognized and encouraged by the Uniform Parentage Act support the conclusion that once-accepted assumptions about "family identity" and "noncustodial fathers" are losing force. To the extent that understandable concerns do arise in particular cases, cannot they be fully considered in the context of the "child's best interest" test?
That test should neither consume inordinate judicial time nor engender confusion in the keeping of birth records. Here we are not presented with the question of what name originally should be entered on a birth certificate. Nothing we say is intended to change the established practice in that regard or disturb the prevalent custom of giving a child born in wedlock the paternal surname. (Donald J., supra, 81 Cal. App.3d at p. 936.) Nor do we create any new right to involve the courts in surname disputes. Rather, we consider only the test to be applied when such a dispute does arise between natural parents.
Adoption of a "best interest" test is but an evolutionary change in the state's rules for resolving parental disputes over children's surnames. *647 Even Trower, supra, 260 Cal. App.2d 75, decided before the recent legislation that helps effect equality of spouses and parents, conceded that a father's interest in having his child bear his name "... is not absolute. The best interests of the child are paramount." (P. 77; see also Montandon, supra, 242 Cal. App.2d 886, 889-892.)
"When the reason for a rule ceases, so should the rule itself." (Civ. Code, § 3510.) "The true doctrine is, that the common law by its own principles adapts itself to varying conditions, and modifies its own rules so as to serve the ends of justice under the different circumstances...." (Katz v. Walkinshaw (1903) 141 Cal. 116, 123 [70 P. 663, 74 P. 766].)
We conclude that the rule giving the father, as against the mother, a primary right to have his child bear his surname should be abolished. Henceforth, as in parental custody disputes, the sole consideration when parents contest a surname should be the child's best interest. Expressions to the contrary in Trower, Worms, Montandon, and Larson are disapproved.
Under the test thus revised the length of time that the child has used a surname is to be considered. (Donald J., supra.) If, as here, the time is negligible because the child is very young, other facts may be controlling. For instance, the effect of a name change on preservation of the father-child relationship, the strength of the mother-child relationship, and the identification of the child as part of a family unit are all pertinent. The symbolic role that a surname other than the natural father's may play in easing relations with a new family should be balanced against the importance of maintaining the biological father-child relationship. "[T]he embarrassment or discomfort that a child may experience when he bears a surname different from the rest of his family" should be evaluated. (Utah Note, p. 330.)
In recognizing a father's right to have his child bear his surname, courts largely have ignored the impact a name may have on the mother-child relationship. Perhaps that is because mothers, usually given custodial preference in the past, generally had more regular contact and could maintain a psychological relationship without the need for the tie a surname provides. However, "the maternal surname might play a significant role in supporting the mother-child relationship, for example, in the cases where the father is the custodial parent or where the custodial mother goes by her birth-given surname." (Ibid.; italics added.) Ms. *648 Herdman uses her birth name; and Aita Marie's future friends, neighbors, teachers, acquaintances, and family indeed may associate her with the name Herdman rather than Schiffman. The trial court apparently failed to weigh those considerations and relied exclusively on the anachronistic, father's "primary right" theory to decide the issue.
Accordingly, the portion of the interlocutory decree that changes the child's surname is reversed. The cause is remanded to the trial court for a finding whether the name change requested by the father is in the best interests of the child.
Tobriner, J., and Manuel, J., concurred.
MOSK, J.
I concur in the order, but would qualify the rationale.
Nearly three decades ago we declared unanimously that the "essence of custody is the companionship of the child and the right to make decisions regarding his care and control, education, health, and religion" (Lerner v. Superior Court (1952) 38 Cal.2d 676, 681 [242 P.2d 321]; also see Roche v. Roche (1944) 25 Cal.2d 141, 144 [152 P.2d 999]). That principle has been respected throughout the years, most recently in In re Marriage of O'Connell (1978) 80 Cal. App.3d 849, 858 [146 Cal. Rptr. 26].
We might indulge in a fruitless debate as to whether a child's name ranks higher on a scale of importance than his health, or his care, or his education, or the moral and spiritual values to be inculcated through his religion. But it cannot be denied that a name at most is just one in a long list of ingredients contributing more or less to the child's well-being and adjustment in society.
Since the law has long recognized the ability and right of the parent with custody to choose among the innumerable alternative courses involving the child's welfare, I can see no rational reason to deny that parent a similar right to select the name with which the child will be more comfortable.
Thus I would recognize a presumption that the parent with custody  whether custody was assumed without conflict, by agreement or by court order  has acted in the child's best interest in selecting the name. The selection may be the original name, or a name change for a child of *649 tender years. The presumption, however, would be rebuttable. Just as the noncustodial parent can seek a corrective court order if the child's health, education or control are deleteriously affected by the abuse of custodial care, so the selection of name can be contested on the ground that it is not in the child's best interest. The burden, however, would be on the noncustodial parent to establish the intrusion on the child's best interest.
The Supreme Court of Louisiana upheld the application of a rebuttable presumption in a case almost identical to the instant matter. (Webber v. Webber (La. App. 1964) 167 So.2d 519, cert. den. on ground that result reached was correct (1964) 168 So.2d 269.) There the child was born pending a suit for the parents' separation, at which time his given name was selected by the custodial mother, though his surname was that of the father. The court of appeals held that in order to effect a name change, the protesting father was required to make an affirmative showing that the name given "would prove detrimental to the present or future welfare of the child." (Id. at p. 522.) Though not articulated as a presumption, the burden of proof was unequivocally placed by the court on the noncustodial parent. While it is notable that the contested name in Webber was not the child's surname, the court did not purport to limit its holding to that circumstance.
The principle that the custodial parent should be given the choice of a newborn child's surname has been codified by the Pennsylvania Legislature. (Pa. Code, tit. 28, § 1.7(b) (1975).) And as one commentator noted, "since the court awards custody on the basis of the child's best interest, it can be argued that the custodial parent is acting in the child's best interest when he or she changes its name." (Comment, Surname Alternatives in Pennsylvania (1977) 82 Dick.L.Rev. 101, 115-116.) Thus it would seem that a parent deemed fit to have custody ordinarily should be deemed fit to select a name that accords with the child's best interest.
An approach analogous to that proposed herein occurs constantly in cases regarding change of custody. When a noncustodial parent seeks modification of a dissolution decree in order to gain custody of a child, the trial court begins with an implied presumption that the best interest of the child is served by leaving the child "in the accustomed environment." (In re Marriage of Mehlmauer (1976) 60 Cal. App.3d 104, 109 [131 Cal. Rptr. 325].) The parent seeking a change in custody shoulders *650 the burden of proving that the best interest of the child requires a change of custody. (Id. at p. 107.) New facts and changed circumstances must be shown to have occurred subsequent to the original custody order. (In re Marriage of Carney (1979) 24 Cal.3d 725, 730 [157 Cal. Rptr. 383, 598 P.2d 36].)
A similar presumption has been applied in cases regarding a custodial parent's right to determine the child's religion. The custodian will not ordinarily be deprived of custody, nor visitation rights affected, because of the other parent's objection to the faith chosen. (Miller v. Hedrick (1958) 158 Cal. App.2d 281, 284 [322 P.2d 231].) The burden is placed on the noncustodial parent to prove the health or well-being of the child is being injured by the choice of religious practices.
A presumption that the custodial parent is acting in the child's best interest when selecting his name would generally function to maintain the status quo, unless a showing can be made that the child's welfare would thereby be harmed. The Court of Appeal reached the vicinity of this rule in Donald J. v. Evna M. (1978) 81 Cal. App.3d 929, 937 [147 Cal. Rptr. 15], when it declared that "where a child has used a particular surname for a substantial period of time without objection by either natural parent, the court, upon petition of one of the natural parents to change the child's surname over objection of the other natural parent, should exercise its power to change the child's surname reluctantly, and only where the substantial welfare of the child requires the change."
In resolving disagreements between parents regarding their child's surname, the "best interest of the child" test has customarily been defined in terms of the father-child relationship. (Note, The Controversy Over Children's Surnames; Familial Autonomy, Equal Protection and the Child's Best Interests (1979) Utah L.Rev. 303, 323.) The abrogation of the father's "primary right" to have the child bear his surname in California  as provided in the majority opinion  requires that a genuine "best interest" standard be implemented. A rebuttable presumption in favor of the custodial parent's choice of name  when custody is in the mother  would accord due weight to the following factors which heretofore have often been subordinated to the father's interest at the possible expense of the child's welfare: (1) embarrassment to the child when he bears a surname different from that of the parent with whom he resides; (2) identification of the child as part of the current family unit; (3) support of the mother-child relationship in *651 cases in which the custodial mother uses her birth or previous surname. (Id. at pp. 329-330.)
With the foregoing qualification, I join in the majority opinion.
BIRD, C.J., Concurring.
(1b) I agree with the rule announced by the majority that a "child's surname should be decided according to the best interests of the child." (Maj. opn., at p. 642.) However, I am concerned about the lack of a clear jurisdictional basis for the trial court's modification of a child's name in the course of a dissolution of marriage. In such proceeding, "the superior court has jurisdiction to inquire into and render such judgments and make such orders as are appropriate concerning the status of the marriage, the custody and support of minor children of the marriage, the support of either party, the settlement of the property rights of the parties and the award of attorneys' fees and costs...." (Civ. Code, § 4351.) And in any proceeding under the Family Law Act other than an action for legal separation, "the court, upon the request of the wife, shall restore the birth name or former name of the wife regardless of whether or not a request therefor was included in the petition." (Id., § 4362, subd. (a).)
Neither of these code sections establishes whether the court in a Family Law Act proceeding has jurisdiction to change the name of a child of the marriage, or whether such a name change can be accomplished only through a change of name petition filed under Code of Civil Procedure section 1275 et seq.
I recognize that many courts have apparently assumed the existence of such jurisdiction in a proceeding to dissolve a marriage. (See Annot., Rights and Remedies of Parents Inter Se with Respect to the Names of Their Children (1979) 92 A.L.R.3d 1091; but see Dolgin v. Dolgin (1965) 1 Ohio App.2d 430 [205 N.E.2d 106], dealing with lack of juvenile court jurisdiction in the face of an explicit change of name statute.) Nevertheless, the Legislature might well consider clarification of the proper procedure to use in seeking to change the name of a child incident to a dissolution of marriage. Such clarity would be particularly useful in a case such as the present one, in which the issue was raised by the trial court rather than the parties. (Maj. opn., at p. 642.)
CLARK, J., Dissenting.
The parties were married on January 15, 1977, and separated on June 29, 1977. Their child was born on November *652 2, 1977. The mother directed that her maiden rather than the father's surname be placed on the birth certificate as the child's surname. Dissolution proceedings were heard in February 1978. The trial judge granted custody of the child to the mother and reasonable visitation rights to the father. He ordered the father to pay child support of $200 per month and medical/hospitalization insurance premiums. The judge further ordered the child shall bear the father's surname, enjoining the parties from changing the name without court permission.
Well-settled common law holds that a legitimate child shall bear the surname of its father. Case law speaks of the father's "protectible interest" or "primary right" in having his child bear his surname. The rule is not absolute, and exceptions are allowed when required in the best interests of the child. Thus, paternal misconduct may justify forfeiture of the right. Showing that the name will be deleterious to the child may warrant a change. Stating the matter another way, there must be a strong showing of unusual circumstances if a child is to be deprived of the father's name. (Donald J. v. Evna M. (1978) 81 Cal. App.3d 929, 936 [147 Cal. Rptr. 15]; In re Trower (1968) 260 Cal. App.2d 75, 77 [66 Cal. Rptr. 873]; In re Worms (1967) 252 Cal. App.2d 130, 134-135 [60 Cal. Rptr. 88]; Montandon v. Montandon (1966) 242 Cal. App.2d 886, 889-892 [52 Cal. Rptr. 43].) While each of the last three cited cases involved an attempt to use a stepfather's surname, the same common law rule should apply when a maternal surname is sought to be used.[1]
Whatever the ancient origins of the common law rule, it must be obvious to all that the rule reflects past and present custom and practice in California  legitimate children are given the paternal surname. Apart from adoptions  where the express purpose is to sever biological ties  we are unaware of any significant number of California parents refusing to use the paternal surname, and this case reflects no evidence that the traditional practice is even questioned.
Custom and practice have always been fundamental to our civil law because they necessarily define and assure reasonable expectations of the parties. When it appears a certain result will uniformly occur in the absence of dispute, the courts in a democracy should defer to popular determination unless Constitution or statute requires a different result. *653 No constitutional or statutory law even suggests questioning the custom and practice at issue.
Neither the majority nor concurring opinion has shown that the common law rule favoring the paternal surname has resulted in any evil, and it is presumptuous  maybe even elitist  for this court to now reject long-settled California practice and custom.
I would affirm the trial court's judgment.
Richardson, J., concurred.
NOTES
[1] For example, apart from parental disputes, California recognizes the common law right to change one's name by nonfraudulent usage (Code Civ. Proc., § 1279.5, subd. (a); see In re McGehee (1957) 147 Cal. App.2d 25, 26 [304 P.2d 167]) and also provides a name-change proceeding to be brought by the person whose name is sought to be changed, his parent, guardian, or other near relative. (Code Civ. Proc., § 1276.) Name changes may arise from personal or parental preference, adoption, and other circumstances. Indeed, in California and elsewhere the right of a competent person to choose and change her or his surname cannot lightly be overcome. (McGehee, supra; see Utah Note, at p. 317 and fn. 63.)
[1] Additionally, use of the mother's surname may subject the child to the unjustified stigma of illegitimacy.