
[No. F008844. Fifth Dist. Nov. 8, 1988.]

In re the Marriage of CYNTHIA and BRUCE S. DOUGLASS.
CYNTHIA DOUGLASS, Appellant, v.
BRUCE S. DOUGLASS, Appellant.

**[Opinion certified for partial publication.†]**

---

†Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

**COUNSEL**

Allen, Cornell, Polgar & Proietti, Dennis A. Cornell and Donald J. Proietti for Appellant Wife.

Trimbur, Davis, Clark & Jacobson and Philip A. Pimentel for Appellant Husband.

**OPINION**

**MARTIN, Acting P. J.**—A petition for dissolution of marriage was filed on September 11, 1986, after a one-month-long marriage. In the judgment of dissolution of marriage, which was entered on January 12, 1987, it was stipulated that Cynthia Douglass, now known as Cynthia Lesher (hereinafter referred to as mother), was pregnant with a child of the marriage and that jurisdiction was reserved over the issues involving the unborn child.

On March 6, 1987, appellant Bruce S. Douglass (hereinafter referred to as father) filed an order to show cause regarding issues of child custody, child support, child visitation, and the surname of the minor child ultimately born on March 19, 1987. On March 10, 1987, mother filed an order to show cause seeking child support, attorney fees and costs, and restraining orders.

The final judgment of dissolution was entered on March 11, 1987.

On March 27, 1987, the two parties entered into a mediated agreement which was made an order of the court specifying that legal custody be given both parents, physical custody shall be with the mother, and father was provided a temporary agreement for visitation.

On April 24, 1987, the court issued a decision specifying that the surname Douglass-Lesher appear on the birth certificate of the minor child, David Thomas, born on March 19, 1987, and he shall be known by the surname Lesher for all other purposes. The father was further ordered to pay $250 per month for child support and the mother was ordered to pay

father the sum of $1,000 for attorney fees and costs. The order was filed June 10, 1987.

A timely notice of appeal was filed by father on the issue of the child's surname on June 18, 1987, and a cross-appeal was filed by mother on the issue of child support and attorney fees.

## FACTS

The parties were married on July 18, 1986, and separated on August 21, 1986, after a period of approximately one month. The petition for dissolution of marriage filed by mother noted she was then pregnant with a child of the marriage. In the judgment of dissolution of marriage, entered on January 12, 1987, she requested her former name of Cynthia Ann Lesher be restored and further stated that she was pregnant at that time with a minor child of the marriage and, accordingly, jurisdiction was expressly reserved over the custody, visitation and support of the unborn minor child.

The minor child, David Thomas, was born on March 19, 1987, approximately one week after the dissolution was final on March 11, 1987. On March 26, 1987, the parties attended mediation regarding custody and visitation.

Father is a colonel in the United States Air Force and is stationed at Castle Air Force Base. He has physical custody of two children of a prior marriage both of whom use the surname Douglass. One of these children is aged 17 years and residing with father, and the other is aged 19 and attending college and resides with father during the summer months.

Mother is currently unemployed and has two children of a previous marriage. During the previous marriage, mother used the surname Rice for six years and bore two children who also used the surname Rice. After the dissolution of the Rice marriage, mother petitioned to change the Rice boys' names to Lesher. The primary reason given for the change was that the father of the boys had stated to mother that he wanted to terminate his relationship with the boys. The change of the boys' names on their birth certificates occurred in 1987. Mother was also previously married for a period of three years and used the surname Williams during that time. After the dissolution of that marriage, mother restored her name to Lesher.

## DISCUSSION

### I. *Whether Father Has a Primary Right to Give His Child Born In Wedlock a Paternal Surname*

As father explains, this case involves the question of which surname should be placed on the birth certificate of a child of a marriage between two biological parents who are divorced and disputing custody. According to father, California law prescribes that the established practice and prevalent custom of giving a child born in wedlock the paternal surname should be followed and contends the trial court erred in not adhering to that practice. It is father's position that California case law has only addressed the question of changing the surname of a child rather than imposition of the original surname.

The California Supreme Court in the case *In re Marriage of Schiffman* (1980) 28 Cal.3d 640 [169 Cal.Rptr. 918, 620 P.2d 579] faced a similar factual situation. In that case, the Schiffmans separated six months after the date of marriage. The wife was four months pregnant at the time of separation. She petitioned for dissolution and noted there was an unborn child. When the child was born, the wife registered her maiden name as the surname on the birth certificate. The dissolution was essentially uncontested and custody of the child was given to the wife. The case is factually distinguishable on the basis that the court was faced with a request to *change* the child's name. In the instant case, father relies heavily on this distinction.

In *Schiffman,* the Supreme Court noted the historical sequence evolving into the custom of patrilineal succession in England. (28 Cal.3d at p. 643.) The court also reviewed the fact that at common law a married woman had no legal identity apart from her husband and that after marriage, custom dictated the wife give up her surname and assume the husband's surname. She could no longer contract or litigate in her own name; nor could she manage property or earn money. Allowing the husband to determine the surname of the offspring was part of the custom and system, wherein he was "sole legal representative of the marriage, its property, and its children." (*Ibid.*)

However, the court further stated "[n]othing in the statutes or Constitutions of the United States or California dictates that a child bear the father's surname. Nor, when parents disagree, is there any command other than in common law that the father's name be preferred." (28 Cal.3d at p. 643.)

The high court noted that the bases for patrimonial control of surnames have "disappeared." (28 Cal.3d at p. 643.) Through a long succession of

legislation, wives now have a separate legal identity; many instances of sex discrimination in parental rights and responsibilities have been eliminated; the Family Law Act, enacted in 1969, adopted "no-fault" divorce (Civ. Code, § 4506);[1] preference accorded mothers in custody disputes was deleted by the Legislature in 1972 (§ 4600); and custody of young children is to be awarded to "either parent according to the best interests of the child." (*In re Marriage of Carney* (1979) 24 Cal.3d 725, 730 [157 Cal.Rptr. 383, 598 P.2d 36, 3 A.L.R.4th 1028].) In 1979 the Legislature amended section 4600, declaring that it is the public policy of this state to encourage divorced parents "to share the rights and responsibilities of child rearing. . . ." Furthermore, the Legislature decreed that, in awarding custody, the trial court "shall not prefer a parent as custodian because of that parent's sex." (§ 4600; *In re Marriage of Schiffman, supra,* 28 Cal.3d 640, 644.)

"In 1975 the Legislature adopted the California Uniform Parentage Act. (Stats. 1975, ch. 1244, § 11, p. 3196.) One of its aims is to eliminate legal distinctions between legitimate and illegitimate children. It provides that 'As used in this part, "parent and child relationship" means the legal relationship existing between a child and his natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties, and obligations. It includes the mother and child relationship and the father and child relationship.' (§ 7001.) Further: 'The parent and child relationship extends equally to every child and to every parent, regardless of the marital status of the parents.' (§ 7002.) *The major premise is that '. . . regardless of the marital status of the parents, all children and all parents have equal rights with respect to each other.'* (U. Parentage Act, § 2, Comrs. com.)" (28 Cal.3d at p. 644, italics added.)

 This court has ruled that the Uniform Parentage Act *abrogated common law rules governing parental disputes over children's surnames.* (*Donald J.* v. *Evna M.* (1978) 81 Cal.App.3d 929 [147 Cal.Rptr. 15].) In that case, a child was born out of wedlock, and the mother used her own surname as that of the infant on the birth certificate. Three years later the biological father commenced an action to have himself declared the father. He also sought an order directing the child use his surname and that the birth certificate be corrected. We stated: "absent a statute to the contrary, it would appear that the common law of this state is that a father of a child born in lawful wedlock has a primary right or protectible interest in having that child bear his surname while the mother of a child born out of wedlock has a primary right or protectible interest in that child bearing her surname." (*Id.* at pp. 936-937.)

---

[1] All statutory references are to the Civil Code unless otherwise indicated.

However, relying on the Uniform Parentage Act and the previously quoted premise of the act, the court continued ". . . *that regardless of the marital status of the parents,* all children and all parents have equal rights with respect to each other," and concluded that the controlling consideration in determining whether a change in a child's surname should be ordered against the objection of one of the parents, is the welfare of the child. (81 Cal.App.3d at p. 937, italics added.)

The California Supreme Court, in *Schiffman,* adopted and implemented that rule suggesting that the *Uniform Parentage Act provided a compelling implication that the common law had been overruled* and stated "[t]he Legislature clearly has articulated the policy that irrational, sex-based differences in marital and parental rights should end and that parental disputes about children should be resolved in accordance with each child's best interest." (*In re Marriage of Schiffman, supra,* 28 Cal.3d 640, 645.)

"It is argued that rules preferring the paternal surname are justified because they formalize long-standing custom, provide a convenient and certain surname system, make official record-keeping simpler, and minimize confusion and difficulty with public and private bureaucracies. [Citation.] Moreover, courts and commentators have pointed out that identification with the paternal surname may give the child a healthy sense of family as well as ethnic and religious identity and also maintain her or his rightful link with an absent or noncustodial father. [Citation.]

"None of those concerns mandates retention of the father's preference. Surnames now may be changed in many situations, and the patrilineal rule has hardly been absolute. [] Our record keeping and genealogical systems cope well with the truly significant number of individuals and families that already deviate from the biological-patrilineal norm. We see no reason why these systems cannot accommodate too a fairer standard for resolving disputes between biological parents.

"Further, the changing family patterns that are recognized and encouraged by the Uniform Parentage Act support the conclusion that once-accepted assumptions about 'family identity' and 'noncustodial fathers' are losing force. To the extent that understandable concerns do arise in particular cases, cannot they be fully considered in the context of the 'child's best interest' test?" (28 Cal.3d at pp. 645-646.)

The court then overruled cases which stated a rule giving the father, as against the mother, a primary right to have the child bear his surname and declared that "[h]enceforth, as in parental custody disputes, *the sole consid-*

*eration when parents contest a surname should be the child's best interest."* (28 Cal.3d at p. 647, italics added.)

However, the high court specifically noted that it was not presented with the question of what name originally should be entered on a birth certificate.

"Nothing we say is intended to change the established practice in that regard or disturb the prevalent custom of giving a child born in wedlock the paternal surname. (*Donald J., supra,* 81 Cal.App.3d at p. 936.) Nor do we create any new right to involve the courts in surname disputes. Rather, we consider only the test to be applied when such a dispute does arise between natural parents." (28 Cal.3d at p. 646.) However, our reading of *Donald J.,* in retrospect, does not seem to make such a distinction. After recognizing that the prevalent custom provided the father of a child born in lawful wedlock with a primary right or protectible interest in having his child bear his surname, this court went on to state: "With the adoption of the California Uniform Parentage Act no longer can it be said that a parent has a primary right or protectible interest in having his or her child bear and maintain that parent's surname merely because of the parent's sex and marital status with respect to that child's other parent at the time the child is born." (*Donald J.* v. *Evna M., supra,* 81 Cal.App.3d 929, 937.)

It appears more likely, in our view, the Supreme Court was merely stating a lack of intent to change the prevalent *custom* of giving a child the paternal surname when both biological parents and the child are part of the same family unit at the time of the child's birth. The high court was not setting forth law requiring the use of the paternal surname in those circumstances. ▮▮▮▮▮ Indeed, there has been no case law or statutory law to that effect and that issue was certainly not before the court in *Schiffman.*[2]

In any event, we can perceive of no rational basis why the reasoning and conclusions of *Schiffman* should not apply with equal logic to the facts and circumstances of the instant case involving a custody dispute regarding a legitimate child and a quarrel concerning the child's surname between the two biological parents.[3] This conclusion comports with that of *Schiffman*

---

[2] California recognizes the common law right to change one's name by nonfraudulent usage (Code Civ. Proc., § 1279.5, subd. (a)) and also provides a name-change proceeding to be brought by the person whose name is sought to be changed, his parent, guardian, or other near relative. (Code Civ. Proc., § 1276.) Apart from parental disputes, California recognizes the right of a competent person to choose and change his or her surname and that right cannot be overcome without a substantial reason. (*In re McGehee* (1956) 147 Cal.App.2d 25, 26 [304 P.2d 167].)

[3] In the mediated agreement, mother was awarded temporary physical custody at least in part because she was breast feeding the child at the time of the initial mediation.

where our Supreme Court stated: "We conclude that the rule giving the father, as against the mother, a primary right to have his child bear his surname should be abolished. Henceforth, as in parental custody disputes, the sole consideration when parents contest a surname should be the child's best interest. Expressions to the contrary in *Trower, Worms, Montandon,* and *Larson* are disapproved." (*In re Marriage of Schiffman, supra,* 28 Cal.3d at p. 647.) ■ Whether the quarrel regarding the appropriate surname arises at birth or at some subsequent time seems to us to be a distinction without a difference. In either instance, the question should be decided according to the best interests of the child. The traditional rule that the father has a "primary right" or "protectible interest" in having the minor child bear his surname even after the mother is awarded custody has been abolished (*Id.* at pp. 642, 647), and the question of what is in the "child's best interests" is one of fact.

In the instant case, the trial court was presented with conflicting and important arguments regarding the interests of the child in bearing a particular surname. Father contended that he not only had this "protectible interest" in having the child bear his surname but also an interest in maintaining the biological father-child relationship. Father felt it necessary for the child to bear the surname Douglass to maintain their father-child relationship and know him as the father, particularly since he did not have physical custody of the child. However, father repeatedly asserted he wished to take a full role in raising the child and would be seeking physical custody for 50 percent of the time. Upon further questioning, father testified he felt the child should bear Douglass as a surname even were he to gain 50 percent (or more) physical custody of the child. From the record, it appears father was truly concerned with the best interests of the child in maintaining a parent-child relationship with the noncustodial parent; however, it also appears he desired the child to bear the name of Douglass no matter what the circumstances in order to promote as close a father-child relationship as possible.

He also points out that the mother has already changed her name four times and her sons' names have also been changed. He offers consistency in that neither he nor his children have ever changed their name. Father's assumption mother may again change her name, while speculative, is not unreasonable in view of her history.

The father was also concerned that his child would learn the reason that the other two Lesher children no longer bore their father's surname (Rice), i.e., that their father wished to terminate his relationship with them. Father is concerned that his child might believe this is the same reason for his not bearing Douglass as the surname. This concern seems speculative at best

and should bear little weight. Father also contends that because he and his sons have never changed their name, Douglass would provide consistency for his child, a benefit less assured if given the surname Lesher.

The mother's argument centered on the fact that she and her two sons, aged six and eight, all share the same last name, Lesher. She expressed concern the child will bear an embarrassment or discomfort from having a surname different from the rest of his family members with whom he resides. This, too, seems speculative to us. Counsel for the mother emphasized that any decision made by the trial court was not irrevocable and could be modified if circumstances changed and the best interests of the child required a different result. Mother testified she had no objection to father using the name Douglass as the child's surname while the child resided with him. Ultimately, mother's trial counsel argued for use of a hyphenated name for the child.

In evidence was the fact that the wife had custody and was nursing the child. While this was a temporary custody award, there was no evidence that the child would not continue to be primarily a part of the mother's household, grow up in that household and go to school with her two other children who were closer in age to the child in question than the Douglass children. The trial court ultimately ruled that the minor child should use the same last name as the family members with whom he was presently residing, i.e., Lesher.

Thus, the final question is whether substantial evidence supports the trial court's conclusions. ██ In this regard, our Supreme Court stated in *Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427 [45 P.2d 183], as cited by mother: "In reviewing the evidence on such an appeal all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. [Citations.]" (*Id.* at p. 429.)

██ The trial court's Solomon-like determination that the birth certificate should state both surnames in a hyphenated form appears neither arbitrary nor capricious. It meets and satisfies the concerns of both parents in establishing an identity with both parents and their respective family units. The trial court's ruling that the mother could use her surname solely

for all other purposes satisfied the concern of the child custody expert who testified that use of a hyphenated name is just "too much to saddle a child with." In this regard, we might have reached a different conclusion than that of the trial court. However, substantial evidence, although contradicted, supports the trial court's decision.

It should be noted that the child custody "expert," having testified in a total of "five or six" court trials involving the surname to be assigned a child, also was of the opinion that the particular surname used by a child was not a primary factor in maintaining parent-child relationships. He stated the most significant factor in maintaining a parent-child relationship is the attitudes and conduct of the parents.

"The name itself is not a critical factor. . . . [¶] Children are able to handle the fact that their families are blended or that they come from different parentage. Children are amazingly flexible in this way, and especially if the non-custodial parent is going to be actively involved and fully involved in the child's life, they would need to know . . . what their role is and who they are and what their relationship is with that other parent." Bearing the surname of the noncustodial parent does, however, help the child identify with that parent.

The trial court emphasized the order made is subject to modification upon a showing of changed circumstances.

Therefore, we conclude that the trial court used the appropriate legal standard in selecting the child's surname and that determination must be affirmed since it is one of fact and supported by substantial evidence.

### II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . .

The decision of the trial court regarding the surname of the minor child and award of attorney fees is affirmed. The decision of the trial court regarding the awarding of child support is reversed and remanded with instructions the trial court provide a clear, express and substantiated basis

---

* See footnote, *ante,* page 1046.

for the allowance of the hardship deduction. Costs on appeal are denied both parties.

Best, J., and Gallagher, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.