[No. B059696. Second Dist., Div. Four. Mar. 24, 1993.]

In re the Marriage of JOHN K. McMANAMY and ANNE G. TEMPLETON.
JOHN K. McMANAMY, Respondent, v.
ANNE G. TEMPLETON, Appellant.

**COUNSEL**

Trope & Trope and Thomas Paine Dunlap for Appellant.

Spector, Buter, Hoberman & Buzard, Glenn S. Buzard and M. Bruce Roberts for Respondent.

## OPINION

EPSTEIN, J.—In this action for dissolution of the marriage between Anne Templeton and John McManamy, Anne Templeton appeals from the order of the trial court changing the surname of the parties' daughter from Templeton to McManamy-Templeton. We find no evidence that the name change was in the best interests of the child and therefore reverse the order.

### FACTUAL AND PROCEDURAL SUMMARY

Anne Templeton (mother) and John McManamy (father) were married on October 10, 1987. Their daughter, Kate, was born on April 6, 1988. On Kate's birth certificate, "McManamy" is listed as her middle name, and "Templeton" is listed as her surname, in accordance with the worksheet prepared by Kate's mother.

Templeton was not mother's birth name, but the surname from her prior marriage, which she continued to use after her marriage to John McManamy. She had a son from that prior marriage, whose surname is also Templeton.

Mother and father separated on August 4, 1989. At the mandatory settlement conference in the subsequent dissolution of marriage action, after all other issues were resolved, father sought to have Kate's name changed to "McManamy-Templeton." Mother opposed this change.

The parties submitted declarations in support of their positions, the court heard argument, then took the matter under submission. Two days later the court issued the following order: "The minor child of the parties, now known as Kate McManamy Templeton, born April 6, 1988, shall henceforth have the legal surname McManamy-Templeton. The parties shall cooperate in executing all documents to effectuate this change. Abbreviation of this name by Kate in school (as long as portions of the hyphenated name are included) to the extent use of the full name becomes unwieldy will not be deemed a violation of this order." Mother appeals from this order.

### DISCUSSION

█ It is now settled in California that "the sole consideration when parents contest a surname should be the child's best interest." (*In re Marriage of Schiffman* (1980) 28 Cal.3d 640, 647 [169 Cal.Rptr. 918, 620 P.2d 579].) Factors to be considered in determining the best interest of the child include the length of time that the child has used a surname; the effect of a name change on preservation of the father-child relationship; the strength of

the mother-child relationship; and identification of the child as part of a family unit. (*Ibid.*) The court should balance "the symbolic role that a surname other than the natural father's may play in easing relations with a new family" against "the importance of maintaining the biological father-child relationship," and also consider the embarrassment or discomfort the child might experience if he or she bears a surname different from the rest of the family. (*Ibid.*)

In *Schiffman,* the court noted that earlier cases had recognized a father's right to have a child bear his surname, while ignoring the impact a name may have on the mother-child relationship. "Perhaps that is because mothers, usually given custodial preference in the past, generally had more regular contact and could maintain a psychological relationship without the need for the tie a surname provides. However, 'the maternal surname might play a significant role in supporting the mother-child relationship, for example, in the cases where the father is the custodial parent *or where the custodial mother goes by her birth-given surname.*' [Citation.]" (28 Cal.3d at p. 647, italics in original.)

With these considerations in mind, we examine the sufficiency of the evidence before the court. ■ "When a judgment is attacked as being unsupported by the evidence, 'the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the [trier of fact].' [Citation.]" (*PWS, Inc.* v. *Ban* (1991) 234 Cal.App.3d 223, 230 [285 Cal.Rptr. 598].)

It was uncontradicted that the minor child had been known as Kate McManamy Templeton since her birth. She was three years old and had started school at the time of the hearing. The parties share joint legal and physical custody. Kate is with her father on alternate weekends, on Monday afternoons, and overnight on Wednesdays; the remainder of each week she resides with her mother and brother.

In his declaration, Kate's father stated: "I feel strongly that it is wrong that Kate bear the last name of Anne's former husband. All that I am requesting is that both parents' names be used instead of solely the name of a total stranger to Kate. I do not object to the use of the name Templeton, but suggest that Kate's last name should be 'McManamy-Templeton.' " He continued, "It is difficult for me to contend to this Court that this change of Kate's last name will have an instant beneficial effect on Kate's life—she is only three years old. However, I do believe that it will have long-term beneficial effects. Kate should not be confused about her heritage or the role

I play in her life. Kate should not have to wonder why her last name is not the same as her father's."

■ This is the complete extent of father's showing in support of the name change. We find no authority giving mother's surname less importance because it was the surname of her former husband rather than her birth-given surname. It was in fact mother's name at the time of her marriage to father, and at the time of the minor's birth; it is in effect mother's "maiden name" within the context of this second marriage. Thus father's complaint that the surname Templeton was the name of a "total stranger to Kate" is without force. Templeton is the surname of Kate's mother and of Kate's brother, with whom Kate lives for a substantial portion of each year. Father provided no meaningful link between the proposed name change and his relationship with his daughter; instead he simply voiced his unhappiness with the mother's choice of surname for the child.

We find this record devoid of any substantial evidence that it would be in Kate's best interest to have her surname changed from Templeton to McManamy-Templeton. On the contrary, the court's order reflects the possibility that yet a third surname could become necessary if Kate found the hyphenated surname unwieldy. It can hardly be considered in the child's best interests to have her surname changed repeatedly, unless some strong benefit resulted from the change.

Father expressed concern that Kate not be confused about her heritage or the role he plays in her life. We note that Kate does bear father's name as part of her own, albeit as a middle name rather than a surname. More importantly, Kate's understanding of her father's role in her life will not be based solely on her surname, but will develop in light of his conduct and attitudes, particularly his active involvement in her life. (See *In re Marriage of Douglass* (1988) 205 Cal.App.3d 1046, 1056 [252 Cal.Rptr. 839].)

As there is no substantial evidence to support the order of the trial court, reversal is required.

### DISPOSITION

The order is reversed. Appellant is to have her costs on appeal.

Woods (A. M.), P. J., and Hoffman, J.,* concurred.

---

*Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial Council.