Filed 6/20/13  In re Patricia F. CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re PATRICIA F., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY, <br><br>    Plaintiff and Respondent, <br><br> v. <br><br> SHANNON T., <br><br>    Defendant and Appellant. | A137017 <br><br> (Alameda County <br> Super. Ct. No. OJ11016843) |

In 2011, the Alameda County Social Services Agency (the agency) filed a petition pursuant to Welfare and Institutions Code section 300, subdivision (b)[1] on behalf of Patricia F.  The petition alleged that Patricia had suffered or was at substantial risk of suffering serious physical harm as a result of the failure or inability of Shannon T. (mother) to supervise or protect her.  Subsequently, K.A. (father) was offered reunification services and elevated to presumed father status.  Father filed a petition to change the child's name from Patricia Lucille F. to Heather Mariam A.  After a hearing, the court found that it was in the child's best interest to change her name and mother appeals from that order.  Mother does not object to the change in the child's surname but contends that the record does not contain substantial evidence to support a finding that it

is in the child's best interest to change her first and middle names. We affirm the judgment.

## BACKGROUND[2]

### *The Petition and Detention*

On April 26, 2011, the agency filed a petition pursuant to section 300, subdivision (b) on behalf of Patricia, who was less than six months old at that time. The petition alleged that the baby had suffered or there was a substantial risk that she would suffer serious physical harm or illness as a result of mother's failure or inability to supervise or protect her adequately. The petition further alleged that mother had serious substance abuse problems, that Patricia's sibling was born drug-exposed and hit himself, that there was domestic violence between mother and her boyfriend, that Patricia was born with a positive toxicology screen for various drugs, that Patricia was born six weeks premature with difficulty breathing and swallowing, that mother was found incapacitated outside the hospital, that mother's boyfriend was a registered sex offender, and that Patricia's father was homeless and unable to provide shelter or care.

The agency filed a detention report on April 27, 2011. The report provided that Patricia's sibling had been placed in a foster home and that Patricia was residing at the hospital due to her special medical needs. She remained medically fragile.

### *Jurisdiction and Disposition*

The agency filed a report for the jurisdictional hearing and recommended reunification services for mother and father. A paternity test on March 30, 2011, indicated that father was Patricia's biological father. Patricia's special medical needs required her to remain in the hospital. Once father learned about the positive results of his paternity test, he visited Patricia for several hours nearly every day.

---

[1] All further unspecified code sections refer to the Welfare and Institutions Code.

[2] The background facts not directly relevant to the issue on appeal are only briefly summarized.

On May 12, 2011, the agency filed a second amended petition and added an allegation pursuant to section 300, subdivision (g). The agency alleged that father was unable to provide care for Patricia because of her special medical needs.

On June 6, 2011, the agency filed an addendum report and recommended family reunification services for mother and no services for father. The report indicated that the hospital had restricted mother and her boyfriend from visiting Patricia because she had "presented high too many times, and ha[d] 'nodded off' while holding the baby . . . ."

On June 21, 2011, father filed a statement regarding parentage and requested the court to enter a judgment of parentage. He requested that the court find him to be the presumed parent of the child.

The agency filed another addendum report on August 10, 2011, and recommended family reunification services for both mother and father. Patricia continued to have special medical needs and was diagnosed as failing to thrive because of her difficulty breathing and slow weight gain. Father stated that he wanted Patricia's last name changed to his surname instead of the last name of mother's boyfriend.

The juvenile court held a contested jurisdictional hearing over multiple days beginning on August 11, 2011, until December 13, 2011. The juvenile court elevated father to presumed father status on August 17, 2011.

On October 6, 2011, the agency filed another addendum report. It recommended that both mother and father receive reunification services and that the agency have the discretion to place Patricia with father.

In November 2011, the agency filed another addendum report and requested that Patricia have in-home visits with Maria, a friend of father's. Maria had agreed to have father and Patricia live in her home. Maria was to provide day care for Patricia while father was at work. Patricia's health was improving, but she was still "very fragile."

On December 13, 2011, the juvenile court found the section 300, subdivision (b) allegation was true. The court determined that the welfare of the child required custody to be removed from mother. It found that mother had made minimal progress and that

3

father had made partial progress. Reunification services were ordered for both mother and father.

***Status Review Hearing***

The agency filed its status review report and recommended terminating family reunification services for mother and continuing services for father. Mother was incarcerated and had maintained intermittent contact with the agency. Mother had not attended any scheduled visits with Patricia and had told the social worker that she did not need to participate in drug testing. Father had completed extensive medical trainings during visits with the foster mother with the help of an Arabic interpreter. He visited Patricia consistently and the child was happy to see him.

The report indicated that Patricia was making great progress, although she still needed constant supplemental oxygen. She continued to feed intravenously through a g-tube that was surgically implanted in her stomach.

On September 13, 2012, the agency filed an ex parte application requesting that the juvenile court permit Patricia to begin a trial visit in father's home. The court granted this request.

In a memorandum to the court filed on September 24, 2012, the agency recommended that Patricia be returned to father, and that the order for out-of-home placement be set aside. Patricia's placement in Maria's home with father was going well. Patricia had taken her first steps and no longer required the use of supplemental oxygen during the day. Mother had not visited Patricia since October 2011, and father had a restraining order against her.

Mother was not present at the hearing on September 26, 2012. Mother's counsel claimed that mother did not have proper notice and objected to the hearing going forward. The juvenile court found that proper notice was provided and ordered family maintenance services for father. The court terminated services for mother.

4

*Petition and Hearing Regarding Name Change*

On March 21, 2012, father filed a petition for a decree changing the name of the minor from Patricia Lucille F. to Heather Mariam A. The matter came on for a contested hearing on June 28, 2012, and the juvenile court found that father did not have to republish the order to show cause regarding the change of name.

Father's counsel argued that the minor's surname should be changed from that of mother's boyfriend to his surname. Father asserted that the first name of Patricia and the child's current middle name of Lucille were names in the family of mother's boyfriend and that he did not want his daughter to be named after an unfamiliar family. Counsel for father explained the following reasons for father's wanting to change the child's first name to Heather: "[I]t's a nice American sounding name, and that when she comes to live with him and pursuing her education, it will be a name that is accessible and make a good impression [or] a homogenous impression with her friends and classmates the people with whom she grows up, so he selected that name for that reason." Father wished to change the minor's second name to Mariam[3] because this name was in his family and he wanted to honor his own family. Additionally, since father would soon be charged with the raising of the child, he believed that he should be permitted "to call her and name her what he thinks is best for her."

Counsel for the minor did not have a position on the matter but agreed with the argument of father's attorney. Counsel for the child commented that father had "honestly earned the right to name his daughter what he deems is appropriate."

Counsel for mother stated that mother objected to the changing of the first and second names but had no objection to the change of the surname. She was not opposed to adding Mariam, which is Mary in Arabic and the name of her own mother, to the name of Patricia Lucille, but she was opposed to removing Patricia Lucille from the child's name. Counsel argued that father's petition did not support a finding that the name

---

[3] The record often refers to "Mary" or Miriam but father's petition confirms that the name requested was Mariam.

change was in the minor's best interest and that Patricia Lucille was just as Americanized as Heather. She added that the name of Patricia was the name of one of mother's favorite maternal aunts and that the name Lucille was the name of mother's great-grandmother.

The juvenile court heard testimony on the name change and the best interest of the child at a hearing on July 12, 2012. The court received confirmation that mother was not contesting the change in the last name to father's surname but was objecting to changing Patricia Lucille to Heather Mariam.[4] The court explained that under *In re Marriage of Schiffman* (1980) 28 Cal.3d 640 (*Schiffman*) it was to determine whether the changed name was in the child's best interest and to consider the length of time the child had used the original name. In the present case, the court noted that the child was under the age of two and thus the period of time she had used the name of Patricia Lucille had been short. The court observed that it must also consider the effect of the name change on the preservation of the father-child relationship and the identification of the child as part of the family unit.

Mother testified that when she was five or six months pregnant she decided to name her daughter Patricia Lucille. She stated that Patricia is the name of her maternal aunt and that her maternal aunt's family had supported her throughout her life. She said that she spent time with her aunt, her mother's sister-in-law, when she had problems with her mother. She commented that she considered her aunt to be one of her closest family members. She declared that Lucille was the middle name of her paternal great-grandmother and that it "was a classy name, an old fashion[ed] name, and a name" that had been in her father's family. She disclosed that her father had died a couple of years earlier and that she had started to get to know him six years ago. She asserted that she wanted to have a name from his family included. She claimed that she had informed father about her name choices for her daughter when she was pregnant and he expressed no objection.

---

[4] The court also established that the parents were unable to come to any compromise regarding the name of the child.

6

Mother explained that she did not object to the change of her daughter's surname to father's surname, but she maintained that the names of Heather and Mariam were traumatic for her. She said that Heather was the name of an earlier dependency investigation worker and that name reminded her "of trauma." She said that Mariam is the Arabic name for Mary, and that Mary is her mother's name. She maintained that her mother had "been very neglectful and abusive" and that she did not have a good relationship with her mother. She added, "So it's kind of a slap in the face to name my daughter that, and it's disturbing to me." She claimed that her daughter knows her name of Patricia Lucille. She commented that she had gone through her pregnancy alone even though father had known he was the father of her child; she should therefore be able to name her daughter.

On cross-examination, mother acknowledged that Patricia was a name in the family of her boyfriend. She denied that she actually named her daughter Patricia after his family member. She stated that Lucille was not a name in her boyfriend's family. When questioned by the attorney for the child, mother admitted that it had been a few months since she had seen her daughter.

Father testified that mother never consulted with him or informed him about any name for the minor. He stated that he liked the name Heather because it is a good American name. He wanted the name Mariam because that was the name of his late mother. He said that he did not select Mariam or Mary to name the child after her maternal grandmother. He insisted that he wanted this name because it was his mother's name.

On cross-examination, father stated that he had no other children. His girlfriend had a daughter but he denied being the biological father of that child. He insisted that he did not want the name Patricia because the name was from the family of mother's boyfriend. When asked whether he knew that the name of the mother of mother's boyfriend was also Mary, he said that he knew that. He stated that Mariam was the name

7

of his mother and that was the reason it did not bother him that the boyfriend's mother had the name of Mary.

The social worker advised the court that the child did respond to the name of Patricia. Counsel for the minor agreed that the child did respond to Patricia but believed that it would not be confusing, at this young age, to change the name.

The juvenile court held the continued hearing on October 18, 2012. Counsel for father quoted from the concurring opinion of Justice Mosk in *Schiffman*: Justice Mosk concluded after reading Pennsylvania law that "it would seem that a parent deemed fit to have custody ordinarily should be deemed fit to select a name that accords with the child's best interest." (*Schiffman, supra,* 28 Cal.3d at p. 649, conc. opn. of Mosk, J.) Counsel argued that there is a presumption that the custodial parent is acting in the child's best interest in matters such as name changes and that was sufficient to justify the requested relief.

Counsel for father summarized father's reasons for wanting the name change: "[Father] was not happy because he was of the belief that Patricia Lucille were names that were common in [the family of mother's boyfriend], and he felt they were naming his child in honor of a non-relative. We have heard testimony to the contrary. But he chose Heather because he likes it. He thinks it is a very American sounding name. That she will do well in school and in the American society with a name such as that. And he chose Mariam in honor of his mother. He'd like to change the last name of his child [to his surname] as opposed [to the surname of mother's boyfriend]." When questioned by the court, counsel agreed that Patricia also sounded like an American name.

Counsel for mother argued that the proposed changes to the first and second names were not in the minor's best interest and that mother had named the child for people in her family. She stated that there was no credible evidence linking the names to the family of mother's boyfriend. Counsel added that custody could change again and the fact that father had custody of the minor did not give him a right to change her name, especially since the child recognized the name of Patricia.

8

Father told the court that he was comfortable with having Patricia as a nickname but not as the first name.

Counsel for the agency added that father was "the one who has stepped in and taken care of the child who has tremendous needs. He has done everything that he needed to do in this case to get custody. He finally has custody." Counsel maintained that she believed "that the case law supports the parent having custody providing the name."

The juvenile court commented that father had "really excelled in obtaining the training that he needed to deal with this very special needs child, who has done everything required of him, both with Patricia and with the court process." The court granted father's request to change the child's name to Heather Mariam A.[5]

Mother filed a timely notice of appeal.

## DISCUSSION

The sole issue on appeal is the changing of the child's name from Patricia Lucille F. to Heather Mariam A. Mother does not object to the change in the child's surname but contends the evidence in the record does not support a finding that it was in the child's best interest to change her first and middle names.

The Supreme Court in *Schiffman, supra,* 28 Cal.3d 640 considered what factors should be considered when the parents cannot agree to the child's *surname*. The *Schiffman* court held that the child's surname should be decided according to the best interest of the child. (*Id.* at p. 642.) "[T]he question of what is in the 'child's best interests' is one of fact." (*In re Marriage of Douglass* (1988) 205 Cal.App.3d 1046, 1054.) Thus, we will affirm the juvenile court's decision if it is supported by substantial evidence. (See *In re Marriage of McManamy & Templeton* (1993) 14 Cal.App.4th 607, 610 (*McManamy*).) Under the substantial evidence standard, all conflicts in the evidence must be resolved in favor of the name change and all legitimate and reasonable inferences indulged to uphold the lower court's decision. (*Douglass,* at p. 1055.) " 'When two or

---

[5] The minute order incorrectly states Miriam rather than Mariam.

more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. [Citations.]' " (*Ibid.*) The burden is on mother to establish that the order is not supported by substantial evidence. (*Adoption of Allison C.* (2008) 164 Cal.App.4th 1004, 1011.)

As the juvenile court in the present case noted, the Supreme Court in *Schiffman* considered what should be evaluated when deciding whether to permit a change to the child's surname. The Supreme Court specified that the following factors should be considered: the length of time that the child has used the present name, the effect of a name change on preservation of the father-child relationship, the strength of the parent-child relationships, and identification of the child as part of a family unit. (*Schiffman, supra,* 28 Cal.3d at p. 647.) We are not aware of any California published case that has considered a challenge to a change of a child's first or middle name but we believe that, as with a request to change the child's surname, we consider whether the requested change is in the child's best interest.

In the present case, substantial evidence supported the juvenile court's decision to permit father, the person "who has stepped in and taken care of the child," to change the child's name from Patricia Lucille to Heather Mariam. Although the child responded to the name Patricia, the child was under the age of two when the court issued its order to change the child's name. The court concluded after hearing from the child's attorney that the child would not suffer any detriment if her name were changed because she had not had the name for a long period and, at that young age, had not yet developed an attachment to the name. Mother did not present any evidence indicating that a name change would be harmful to the child.

Father wished to change Patricia to Heather because, among other things, he liked the name of Heather and believed the name of Patricia was related to the family of mother's boyfriend. Mother testified that she named the child after mother's aunt but on cross-examination she admitted that Patricia was a name in the family of her boyfriend.

10

The juvenile court could thus conclude that it would be in the child's best interest not to have a name connected to the family of mother's boyfriend.

With regard to the name Lucille, father wished to replace this name with Mariam because he had no connection to the name of Lucille. The child would be connected to his family if she had the name of Mariam, as that was the name of his mother. Thus, the name helped identify the child as part of father's family and helped connect her to his family.

Mother was not opposed to adding the name of Mariam to Patricia Lucille but opposed changing Lucille to Mariam. The juvenile court, however, could conclude that it would be unwieldy and not in the child's best interests to add another name. There was nothing in the record to indicate that the child responded to her middle name of Lucille or that she would suffer any detriment if that name were replaced with Mariam, the name of father's mother.

Accordingly, we conclude that substantial evidence supported the juvenile court's decision to grant father's request to change the child's name. The record clearly established that the child had a stronger relationship with her father than mother. Mother had not consistently visited the child and her reunification services had been terminated. In contrast, father consistently spent time with the child and the child had been placed with him under the agency's supervision. There was evidence that Patricia was a name in the family of mother's boyfriend, father was the person caring for the child, the name of Mariam was in father's family and thus helped identify the child as part of father's family, and the child had not had her name for a very long period of time.

Mother argues that the present case is similar to the situation in *McManamy, supra,* 14 Cal.App.4th 607. In *McManamy,* the trial court presiding over the parties' marital dissolution granted the father's request to change the three-year-old daughter's surname to include his surname hyphenated with the mother's surname. (*Id.* at p. 610.) The father's argument was that the surname was that of the mother's prior husband and he was a complete stranger to the child. (*Ibid.*) The appellate court reversed and stated

11

that the father in his declaration did not provide any "meaningful link between the proposed name change and his relationship with his daughter; instead he simply voiced his unhappiness with the mother's choice of surname for the child." (*Id.* at p. 611.)

Mother argues that here, similarly to the situation in *McManamy,* father made no showing as to why the name change was in the child's best interest and simply argued that he, as her father, had an inherent right to change her name. He, like the father in *McManamy,* simply disliked the name choices of mother. She claims that the juvenile court improperly changed the child's name in deference to father's preference.

We disagree with mother that the present situation is similar to the facts in *McManamy.* Here, father did present a meaningful link to the middle name of Mariam. As to the first name of Heather, father did not present any meaningful link to that name but showed the reason for replacing the first name of Patricia. Mother argues that father mistakenly believed that this name was based on a person in the family of mother's boyfriend. However, as already noted, mother acknowledged that there was a person in the boyfriend's family with that name, and we resolve all conflicts in the evidence in support of the juvenile court's decision. (See, e.g., *In re Marriage of Douglass, supra,* 205 Cal.App.3d at p. 1055.) The trial court was entitled to disbelieve mother's testimony that she did not name the child after the person in her boyfriend's family. We can infer from these facts that the trial court concluded that it would not be in the child's best interests to have a first name connected to the family of mother's boyfriend.

We disagree with mother that the record shows that the juvenile court failed to consider any factors reflecting on the child's best interests. The record shows that the court specifically stated that it was considering the child's best interests and the inferences that may be drawn from the facts in the record support the granting of father's request to change the child's name.

12

## DISPOSITION

The judgment is affirmed.

_____
Lambden, J.

We concur:

_____
Kline, P.J.

_____
Richman, J.