In the Interest of Michael S. CARDINAL and Catherine L. Cardinal, his wife, as guardians ad litem for Scott Michael Cardinal, Petitioners,

v.

Tanya E. PERCH, Respondent.

Family Court of Delaware,
Sussex County.

Submitted: Nov. 30, 1990.
Decided: Jan. 11, 1991.

**516**

Petitioner pro se.

Edward C. Gill, Georgetown, for respondent.

MILLMAN, Judge.

This case is a paternity action filed by Michael Cardinal and Catherine Cardinal as guardians ad litem for their minor son, Scott Michael Cardinal ("Scott"), against Tanya Ellen Perch ("Tanya"). *See,* 13 *Del.C.* § 801 *et seq.* ("Delaware Paternity Act").

After blood grouping tests indicated a 99.99 percent probability that Scott was the father of Shawn Allen Perch ("Shawn"), an acknowledgment of paternity was executed. Subsequent to the acknowledgment of paternity, Scott filed a motion for a change of name. *See,* 13 *Del.C.* § 819. The issue before this Court is whether Shawn's name, which was chosen by Tanya without consultation or approval of Scott, should remain Shawn Allen Perch or be changed to Shawn Michael Cardinal as Scott requests.

Scott argues that 16 *Del.C.* § 3128 requires a change of name to Shawn Michael Cardinal. Alternatively, Scott contends that the "best interest" standard of 13 *Del.C.* § 819, mandates that Shawn's name should be changed to that suggested by Scott. Under the "best interest" standard, Scott suggests three reasons why the change of name should be completed: 1)

for inheritance purposes; 2) to receive governmental benefits to which Shawn may be entitled; and 3) because the father's name is more socially acceptable in the community. Each of these contentions will be addressed herein below.

I

While Scott initially contends that 16 *Del.C.* § 3128 entitles him to the absolute right of having his son carry his last name, he reluctantly recognizes that the great weight of judicial authority today supports the proposition that a child's last name should be determined on a "best interest" standard.[1] *See, In re the marriage of Schiffman,* 28 Cal.3d 640, 169 Cal.Rptr. 918, 620 P.2d 579 (1980); *Ribeiro v. Monahan,* R.I.Supr.Ct., 524 A.2d 586 (1987); Parents' Rights as to Children's Names, 92 A.L.R.3d 1091.

It is not disputed that § 3128 mandates that the State Registrar prepare a new certificate of birth in the new name of a legitimated child. While Scott emphasizes the language requiring a new name for the child, a more logical construction places the emphasis on the word "shall" which requires the State Registrar to issue a new birth certificate for the child upon notice of his legitimation. A historical review of our registration of birth statutes supports this view.

On April 7, 1881, our General Assembly passed an act providing for the registration of births. 16 Del.Laws, c. 381. This act obligated the Secretary of State to furnish the Recorder of Deeds of each County suitable books in which to record the births. The attending physician, if one was present, or the one who attended the case of any mother during her lying in period, was instructed to file a report which contained the day, month and year of the birth, sex and color of child, and the names of the father and mother. No distinction

---

1. **Title 16, *Del.C.* § 3128. Legitimation; old and new birth certificates.**

 In cases of legitimation, the State Registrar, upon receipt of proof thereof, shall prepare a new certificate of birth in the new name of the legitimated child. The evidence upon which the new certificate is made and the original certificate shall be sealed and filed and may be opened only upon order of court. (25 Del.Laws, c. 66, §§ 7, 8; Code 1915, § 812; 33 Del.Laws, c. 57, § 4; 34 Del.Laws, c. 69, § 1; 40 Del.Laws, c. 99, § 1; Code 1935; § 795; 44 Del.Laws, c. 69, § 1; 16 Del.C. 1953, § 3128.)

was made at that time between legitimate and illegitimate births. Some 32 years later, our General Assembly established our present day Bureau of Vital Statistics. 27 Del.Laws, c. 85. In addition to forming a Bureau of Vital Statistics, this act dictated not only the registering of births, but provided for the issuance of certificates of birth. The act is significant because it distinguished legitimate births from illegitimate births. While § 6 of the act ordered that the names of the father and mother, among other things, be sent to the Bureau, § 7 required that the certificate of birth state the "full name of father except for illegitimate children." This omission of the name of the putative father on the birth certificate of an illegitimate child remains in effect today. 16 *Del.C.* § 3133(b).

 Under our common law, an illegitimate child did not receive any rights from the natural father. 57 Am.Jur.2d *Names* § 14. It logically follows that the mother then possessed the inherent right to give the child her name. This position is reflected in the current Delaware Law which permits a mother of an illegitimate child to name that child. 16 *Del.C.* § 3133(b).[2] To accept Scott's argument that § 3128 confers upon him the absolute right to select the name of his child would strip the mother of an illegitimate child, upon that child becoming legitimized, of any right in naming her child. Such a conclusion does violence to fundamental notions of fairness. A more reasoned interpretation would be that the child's name would become the one agreed upon by the parents or ordered by a Court, if no agreement could be reached.

This proposition is now codified in 13 *Del.C.* § 819.[3] Accordingly, I hold that 16 *Del.C.* § 3128 does not mandate that the father may dictate as a matter of law the naming of his child. Rather, in the event that the parties cannot agree upon a name of the child, the Court shall make such a determination.

## II

Having decided that our statutory law does not entitle a father to unilaterally select the surname of his child, I am satisfied that pursuant to 13 *Del.C.* § 819, the child's name should be determined based on a "best interests" standard. By enactment of § 819, it appears any common law right a father may have to his legitimated son carrying his surname is abolished.

While § 819 does not define what factors are to be considered in determining the best interest of the child, other jurisdictions have enunciated some factors when dealing with this issue. *In re the marriage of Schiffman,* is perhaps the leading case setting forth the standard to be applied in naming a child when the parents disagree. The *Schiffman* court held that the sole consideration is to be the "best interest" of the child. 169 Cal.Rptr. at page 922, 620 P.2d at page 583. Factors listed by that court in determining what is in the best interest of the child are: 1) the length of time a child has used a surname to be considered; 2) the effect of a change of name on the parent/child relationship; 3) the identification of a child as part of a

---

**2.** Prior to June 23, 1989, Delaware hospitals frequently refused to allow mothers of illegitimate children to give the children any surname except their own. By letter dated June 23, 1989, the State Solicitor informed the Bureau of Vital Statistics that the mother of an illegitimate child may give her child any name she so chooses, including the name of the purported father, as long as it was not used against him in an adversary proceeding.

**3.** **Title 13,** *Del.C.* **§ 819. Change of name.**
If a party to an action filed under this chapter requests the name of the child be changed by order of the Court, the party shall file a motion with the Court which shall set forth the following:

(1) The position of the other parties to the action;
(2) The reason the request is being made; and
(3) If a child is over the age of 14, the position of the child on having his/her name changed.
The Court shall grant the motion if it is deemed to be in the child's best interest and is consistent with the Court's determination of the existence or nonexistence of parentage. (67 Del.Laws, c. 103, § 2.)
In cases not brought under the Delaware Parentage Act, change of names may be obtained pursuant to 10 *Del.C.* § 5901 *et seq.*

family unit; 4) the role that a surname other than the natural father's may play in easing relations with a new family should be balanced against the importance of maintaining the biological father-child relationship; and 5) the embarrassment or discomfort a child may experience when he bears a surname different from the rest of his family. 169 Cal.Rptr. at page 922, 620 P.2d at page 583. *See also, Bobo v. Jewell,* 38 Ohio St.3d 330, 528 N.E.2d 180 (1988) which involved unmarried parents.

■ In addition to the above-enumerated factors, Scott has advanced three additional reasons which he contends support his position that it is in the best interest of this child to carry his surname. First, Scott contends that if his son carries his last name, he could more easily inherit from him. It is unnecessary for Shawn to carry his father's name to be able to inherit from him. Scott can provide for inheritance by last will and testament, and in the event of intestacy, Delaware Law clearly protects Shawn's right of inheritance by the act of his father legitimizing him. *See,* 13 *Del.C.* § 1304.

■ Scott next contends that if Shawn carried his surname, his son could more easily receive Social Security benefits and other government entitlements. Clearly, with Shawn's legitimization, his rights are vested irrespective of his surname.

■ Lastly, Scott suggests that his family name is held in higher esteem in the community than is the family name of the mother, and that his son should benefit from this greater degree of social acceptance. However, aside from this mere assertion, no evidence was presented in support of this claim.

In addition to the considerations Scott presented, the evidence touched on other relevant factors. Shawn was born on September 8, 1988, and he has held his mother's surname since birth. While Shawn is still a young child, he has been known in the community since birth by the surname of Perch. Were this the only factor the Court could consider in its best interest determination, it would not be terribly significant. However, based on the other factors presented, I do find that it should be given some weight in my decision to retain the name of Perch.

It appears from the evidence that both parents are committed to maintaining a relationship with their son. Although the parties have entered into an agreed-upon visitation schedule, because of the strong animosity between them, the exchange of the child from the mother to the father has not been without incident. There is nothing to indicate that either parent would terminate his or her relationship with their child or reduce the level of companionship, nurturing, and parenting, which each now provide Shawn simply because Shawn did not receive his or her surname.

Shawn has resided with his mother in the Perch home since his birth. It does not appear that this living arrangement will change in the foreseeable future. Shawn shares his home with his mother, maternal grandparents, and maternal aunts, who all share the last name of Perch. It also does not appear that mother will be marrying in the near future thus eliminating a possible change in her surname. The fact that Shawn has resided and continues to reside a home where all other members share the same surname of Perch supports his retaining the surname also.

In reviewing the evidence presented and particularly the factors Scott submitted, I am satisfied that Scott has failed to demonstrate to this Court that it is in the "best interest" of this child to carry the father's surname. To the contrary, the record supports the contention that Shawn has been totally integrated into the Perch household, has been known as Perch since birth, and it is in his "best interest" to retain the surname of Perch. Accordingly,

IT IS ORDERED that the motion of Scott Michael Cardinal for a change of his son's name is hereby DENIED and this child shall retain the name of Shawn Allen Perch.

IT IS SO ORDERED.