

FILED

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

AUG 30 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | No. 11-50041 |
| Plaintiff - Appellee, | D.C. No. 2:10-cr-00882-JHN-1 |
| v. | |
| ALAA YAHIA EL BEIALY, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
Jacqueline H. NGUYEN, District Judge, Presiding

Argued and Submitted April 13, 2012
Pasadena, California

Before: KLEINFELD and M. SMITH, Circuit Judges, and SAMMARTINO,
District Judge.**

Beialy was caught smuggling $73,126 out of the country, mostly hidden in

his luggage, and lied about it when questioned. He was eventually indicted on

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

\*\* The Honorable Janis L. Sammartino, District Judge for the U.S.
District Court for the Southern District of California, sitting by designation.

eighteen counts relating to the currency smuggling, 31 U.S.C. § 5332(a), making a false statement, 18 U.S.C. § 1001, using a social security number that was assigned on the basis of false information, 42 U.S.C. § 408(a)(7)(A), falsely representing a number to be the social security number assigned to him, 42 U.S.C. § 408(a)(7)(B), structuring transactions to evade currency transaction reporting requirements, 31 U.S.C. § 5324(a)(3), obtaining naturalization as a United States citizen by making material false statements, 18 U.S.C. § 1425, and using a passport obtained by false statements, 18 U.S.C. § 1546(a).  He pleaded guilty to the currency smuggling count and false statement count and went to trial on the others.   The jury convicted him of two counts of using a social security number that was assigned on the basis of false information, two counts of structuring, and the naturalization count.  The jury acquitted on the remaining counts.  Beialy appeals his conviction.

## I. Brady Violation

Beialy argues that the district court erred in denying him a new trial because of Brady violations.  Brady v. Maryland, 373 U.S. 83 (1963).  The government's expert witness testified that Beialy had deposited over $600,000 from his business from 2002 to 2009 without a single one of the deposits being in excess of $10,000,

2

the threshold for currency transaction reports, even though 40 deposits were over $8,000. By repetitive questions during its witness's testimony, and in closing argument, the government emphasized the theory that Beialy had been intentionally depositing less than $10,000 for years, without once depositing more than that. Agent Nader was asked on the government's direct, "how many of those cash deposits were in excess of $10,000" for the accounts Beialy maintained under the fake name "Aly" and the social security number he had obtained for that alias. He testified "There was not a single one," and again, "There was not a single one," and again "There was not a single one," and again, in answer to the final question, "There was not a single one," just as one would repeat the same four notes in a musical composition to assure that the audience caught the theme. The prosecutor, Sartoris, elicited the catch phrase again, in the same words, on redirect. Though technically accurate, this line of questioning was misleading because it implied that Beialy had always prevented currency transaction reports from being issued. The witness testified on cross examination, and on re-cross that Beialy never made deposits exceeding $10,000 and never generated a currency transaction report.

> Q. So Mr. Beialy should never have filled out any form with the bank statements you reviewed, correct?
>
> A. I can't make that judgment, sir. I can only make the judgment from the bank statements that I reviewed. There was not a single cash

deposit in excess of $10,000. So under my understanding, because there was not a single cash deposit in excess of $10,000, he would not have been indicated by a financial institution to fill that form.

. . .

Q. . . . [W]e agree that none of the deposits ever made that you've analyzed generate a reporting requirement, right?

A. That's correct.

In closing argument, the prosecutor emphasized the "never" theme for the deposits in the Aly accounts to support the implication that "this isn't an accident. This is a series": "none of them above $10,000," "never once above $10,000," "not once, not one of them over $10,000," "none of them over $10,000."

Though defense counsel did not know and the jury did not find out, the government possessed several currency transaction reports that Beialy's deposits had caused to be generated, and after trial obtained several more. Though Beialy had not made any deposits exceeding $10,000 under the "Aly" name, he had made multiple smaller deposits that totaled more than $10,000 in the same day, for which currency transaction reports were filed. The government limited the indictment to years when no reports were issued, so the reports preceded the time period covered

4

by the indictment. For Nader and Sartoris to state that Beialy had never once generated a currency transaction report was to state a falsehood. Had the defense known about the currency transaction reports the government had and those it could get, the prosecutor could not have repeatedly elicited from Agent Nader the theme, "there was not a single one," without devastating impeachment, showing that Beialy had in truth generated currency transaction reports. And the closing argument based on the falsehood that a report had never issued could not have been made without inviting acquittal.

The government's defense against the Brady argument is that the filed currency transaction reports were for dates preceding the time period covered by the indictment. That would not vitiate their impeachment or exculpatory value in the context of how the government presented the case. The government argues that they were not impeaching because the "never once" testimony was technically true for the time period covered by the indictment. That argument misses the point, though, because the existence of the currency transaction reports would have destroyed the government's clear implication that Beialy never once made a deposit that generated a currency transaction report.

The government also agues that, had the defense had the currency transaction reports, the government could simply have argued its case on a different theory, that having learned from earlier experience that deposits singly or in combination exceeding $10,000 generated reports, Beialy subsequently avoided making the same mistake. That might have been a persuasive theory, perhaps making willfulness even plainer than the "never once" argument. But that is not the case the government presented, and we cannot know what the defense might have done had that case been presented. The evidence the government suppressed was exculpatory and impeaching for the testimony the government actually elicited and the theory it actually presented.

The standard for a Brady reversal is that there must be a "'reasonable probability' of a different result [which is] shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" Kyles v. Whitley, 514 U.S. 419, 434 (1994) (quoting United States v. Bagley, 473 U.S. 667, 678 (1985)). We cannot be confident that the jury would have convicted on the structuring counts it accepted had the government disclosed the whole truth. The "not a single one" testimony and "never once" argument would have been exposed as a sham, based on the truth, but not the whole truth. As for whether the

6

government would have obtained the same guilty verdicts, albeit with different testimony and a different argument perhaps, that is too speculative a basis on which to sustain the verdicts. The convictions on counts seven and eight, the two structuring convictions, must be set aside because the government suppressed evidence favorable to the defense.

We reject, though, Beialy's argument that all counts must be retried. The suppression of evidence of currency transaction reports actually filed does not undermine confidence in the other verdicts. Agent Nader's testimony, and the related misleading argument, were limited to the structuring counts. Different witnesses and different evidence were used to prove the misuse of the social security number obtained in Beialy's alternative name, and unlawful procurement of naturalization. The currency transaction reports had nothing to do with either one, nor did Agent Nader's credibility or the "never once" argument. The evidence was clear and overwhelming, and altogether distinct from the structuring evidence, that Beialy obtained two social security numbers, and used them on the dates charged to obtain a California driver's license and to falsely list a person as a dependent on his income tax return.

## II. Fraudulently Procuring Naturalization

Beialy's prison time appears to have been completed even before the briefing was completed, so the briefs understandably focus on count 12, fraudulently procuring naturalization. Beialy argues the jury should have been provided with a special verdict form primarily because of the risk of jury confusion on account of the complexity of this count of the indictment. The instructions, though, made the government's burden of proof on this count clear, and it was not especially complex or confusing. The naturalization count charged that Beialy knowingly procured naturalization as a United States citizen by making material false statements that he had not used other names since becoming a permanent resident, and that he had never knowingly committed a crime for which he had not been arrested. The indictment specified the charged alias, Ala Ismail Aly, and specified the crimes: applying for a social security number under a false name; applying for a California driver's license under a false name; and falsely listing himself under his alias as a dependent on his income tax return. Structuring was not among the charged predicate crimes. The parties agreed upon the instructions given to the jury. They expressly and plainly required that all the jurors "agree [] on which crime or crimes the defendant committed," and specified the elements of

8

each.  Special verdict forms are generally disfavored in criminal cases, and the form of the verdict is within the trial judge's discretion.  United States v. Reed, 147 F.3d 1178, 1180 (9th Cir. 1998).  There was no abuse of discretion here.

Beialy argues that the evidence was insufficient as a matter of law to support his fraudulent procurement of naturalization conviction.  His argument is essentially that he did not use a false name, because all the names he used were on his Egyptian passport.  That passport said he was Alaa Yahia Ismail Aly Elbialy.  He obtained one social security number as Alaa Yahia Elbeialy, and a another as Ala Ismail Aly.  On his income tax return, he said he was Alaa Y. Elbeialy, and claimed himself under his "Aly" alias as a dependent, claiming to be his own cousin.  Perhaps if he had picked one of these names and stuck to it, or even used two of them for separate and non-fraudulent purposes, as a woman may use her married name for social purposes and her maiden name for business or professional purposes, the argument might have force.  But that is not what he did.  Once he established one of the names as his for immigration and tax purposes, he was indeed using a false name when he used another one, not easily connected with the first, for the same purposes.  A "John Quincy Adams" might honestly call himself John Adams, John Q. Adams, J. Quincy Adams, or J.Q. Adams, but he could not

9

honestly call himself John Q. Adams on his income tax return and claim "John Quincy" as a dependent. His use of different dates and places of birth and different names of parents for his two purported identities highlights their fraudulence. The Jackson standard, whether any juror could find guilt beyond a reasonable doubt, is amply satisfied. Jackson v. Virginia, 443 U.S. 307, 319 (1979).

Beialy argues that the government's expert witness on naturalization used an incorrect definition of materiality. Beialy is correct that misrepresentation alone, without materiality, is insufficient for naturalization fraud. United States v. Puerta, 982 F.2d 1297, 1301 (9th Cir. 1992). The judge's instruction to the jury, though, required materiality. The judge instructed the jury in words that Puerta holds to be correct, that "[a] misrepresentation is material if the misrepresentation conceals facts that give rise to a fair inference that defendant was not eligible for naturalization." See id. at 1305. All the evidence, together with the testimony by the Customs and Immigration Services officer, sufficed for the jury to reach that conclusion beyond a reasonable doubt. And the instructions gave Beialy a fair opportunity to show that the Customs and Immigration Services officer got the law wrong, if he did, and that materiality was not proved.

## III. Consistency of Verdicts

Beialy argues that the jury must have been confused because its verdict was inconsistent. But the verdict appears to be consistent. A fair reading of the instructions and verdict in the context of this case indicates that the jury convicted Beialy of obtaining a social security number with false information about his identity and using it, but acquitted him of using a number that was issued to another person. The structuring counts they convicted on all involved more than $10,000 being deposited the same day or on successive days. The counts they acquitted him of involved deposits more than a day apart, including count 11, listing 29 deposits over the course of a year. They convicted him of obtaining naturalization by lying about whether he had used other names or committed the crimes relating to his "Aly" social security number. They acquitted him of use of a passport fraudulently obtained. Arguably his acquittal on the passport fraud count is inconsistent, but not necessarily, because there was no evidence of misrepresentation on his application for a passport. This appears to show careful parsing of the charges and evaluation of the evidence by the jury, not inconsistency.

11

## IV. Expert Testimony and Closing Argument

Beialy's argument that the district court abused its discretion by allowing the government to use experts not disclosed until shortly before trial is unpersuasive because the court offered him a continuance and he turned it down. As for the government eliciting that its structuring expert, Nader, had written his Master's thesis on terrorism financing, that does indeed appear to have been a gratuitous attempt to inject terrorism into the trial even though the government offered no evidence to support it. But the judge gave an effective admonition, the jury's several acquittals show that it was not swayed by passion and prejudice, and there is no reason to think that earlier disclosure would have enabled the defense to keep the prosecutor from doing it. The closing argument contained no "vouching" as it has been defined in this circuit. United States v. Hermanek, 289 F.3d 1076, 1098 (9th Cir. 2002).

## V. Conclusion

The convictions on counts seven and eight, the structuring counts, are **VACATED** and **REMANDED** for retrial. The convictions on the remaining

counts are **AFFIRMED**.   The sentence is **VACATED** and case **REMANDED** for resentencing upon disposition of counts seven and eight.