TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

XAVIER BECERRA
Attorney General

_____

|            |     |                  |
|------------|-----|------------------|
| OPINION    | :   | No. 18-601       |
|            | :   |                  |
| of         | :   | August 28, 2018  |
|            | :   |                  |
| XAVIER BECERRA | : |                |
| Attorney General | : |               |
|            | :   |                  |
| MANUEL M. MEDEIROS | : |            |
| Deputy Attorney General | : |       |
|            | :   |                  |

_____

Proposed relator THOMAS J. FOX has requested leave to sue proposed defendant JUDY MORRIS in quo warranto to oust Morris from the public office of Trinity County Supervisor, on the ground that, in her election documents, she used her married name, "Morris," rather than her birth name, "Yzquierdo," in alleged violation of Elections Code section 18200.

CONCLUSION

Proposed relator does not raise a substantial question of law or fact that warrants initiating a judicial proceeding, and allowing the proposed quo warranto action to proceed would not serve the public interest. Proposed relator's application for leave to sue in quo warranto is, therefore, DENIED.

ANALYSIS

Proposed relator Thomas J. Fox (Fox) was one of two candidates on the ballot for Trinity County Supervisor, Electoral District 2, in an election held on July 7, 2016. The other candidate, who won the election, was proposed defendant Judy Morris (Morris).[1] Morris was sworn into office on January 2, 2017. Fox alleges that Morris "has usurped the office of Trinity County Supervisor . . . in that she appeared on the ballot under a name which is not legally her name,"[2] in asserted violation of Elections Code section 18200 (hereafter, Section 18200).[3] Fox alleges that Morris's legal name is "Judy Yzquierdo," the name under which she is compensated by Trinity County, not "Morris," which is her married name. Fox seeks leave to file a complaint in quo warranto ousting Morris from office and installing him instead.

The gravamen of Fox's complaint is that, once she was divorced, Morris was not legally permitted to continue to use her married name unless she stopped using her birth name "Yzquierdo" for all purposes, or alternatively, obtained a court order changing her name from "Yzquierdo" to "Morris." Fox argues that, since Morris continues to use "Yzquierdo" for some purposes and has not obtained a court order changing her name, her use of her married name "Morris" for purposes of the 2016 election amounts to use of a "fictitious name" within the meaning of Section 18200. As discussed in further detail below, we disagree and therefore deny Fox's application.

"Quo warranto," literally meaning "by what authority," was a writ at common law, by which the crown instituted a formal inquiry into whether a subject had the right to hold public office.[4] The remedy is currently codified in section 803 of the Code of Civil Procedure, which provides in relevant part:

---

[1] Morris garnered 70.97% of the votes to Fox's 27.68%. (Trinity County Election Summary Report, Presidential Primary Election 2016, http://www.trinitycounty.org/modules/showdocument.aspx?documentid=3490.)

[2] Proposed Complaint, ¶ 10.

[3] Section 18200 provides: "Every person who subscribes to any nomination petition a fictitious name, or who intentionally subscribes thereto the name of another, or who causes another to subscribe a fictitious name to a nomination petition, is guilty of a felony and is punishable by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for 16 months or two or three years."

[4] *Rando v. Harris* (2014) 228 Cal.App.4th 868, 875.

18-601

An action may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office . . . .[5]

A private party seeking to bring such an action must obtain the consent of the Attorney General.[6] In deciding whether to grant leave to sue, we do not resolve the merits of the dispute, but only "decide whether the application presents substantial issues of fact or law that warrant judicial resolution, and whether granting the application will serve the public interest."[7] Morris declined to file a response,[8] so we reach our conclusion based on our analysis of the present application, the undisputed material facts, and the applicable law.

The undisputed material facts are as follows: Since early childhood, Morris's name was Judy Marie Yzquierdo,[9] a name that she continues to use for some purposes.[10] Although Fox alleges that he could find no California record of her marriage, he acknowledges having been introduced to "Jeff and Judy Morris" in May 2009, at which time Jeffrey Morris was the Trinity County Supervisor for Electoral District 2.[11] Judy Morris succeeded to her husband's supervisorial seat in 2010,[12] and was thereafter elected

---

[5] Code Civ. Proc., § 803.

[6] 96 Ops.Cal.Atty.Gen. 48, 49 (2013).

[7] 95 Ops.Cal.Atty.Gen. 50, 51 (2012).

[8] See Cal. Code Regs., tit. 11, § 3 (proposed defendant allowed 15 days after service to appear and show cause).

[9] Fox asserts that Morris "was born in Detroit, Michigan in 1963 or 1964, and may have been adopted in California in 1969 under the name 'Judy Marie Yzquierdo.'" (Verified Statement of Facts, ¶ 7.) For the sake of convenience, we refer to "Yzquierdo" as Morris's birth name.

[10] From the undisputed facts, it appears that Morris is paid by Trinity County under the name "Yzquierdo."

[11] State of Nevada records report a marriage between a Judy Marie Yzquierdo and a Jeffrey Morris in April 1998.

[12] Fox alleges that Morris was appointed to fill the seat vacated by her husband, Jeffrey Morris, in 2010. However, local media reported that she was elected to fill that vacancy in 2008, when her husband ran for a seat in the United States House of Representatives. (See Trinity Journal (November 5, 2008), http://www.trinityjournal.com/news/image_379 b8f5a-9ada-56b8-906d-9ac9f93a656f.html.)

to a full term in 2012.  "Shortly after this election, it became public knowledge in the County that Jeffrey Morris and Defendant [Judy Morris] were divorced."[13]  Judy Morris ran for election in 2016 using her married name, but she receives compensation from Trinity County under the name "Yzquierdo."  Morris has not obtained a court order for a name change.

"Name changes may arise from personal or parental preference, adoption, and other circumstances.  Indeed, in California and elsewhere the right of a competent person to choose and change her or his surname cannot lightly be overcome."[14]  The common law recognizes the right of any adult person to change his or her name by general usage or habit without the necessity of legal proceedings.[15]  Code of Civil Procedure section 1286, which embodies a statutory procedure for change of name, merely provides a public record of the change.[16]

The undisputed facts establish that Morris has been publicly known by her married name, "Judy Morris," for some substantial period of time.  Indeed, Fox acknowledges that Morris was elected under that name in 2012.  The name, therefore, cannot be said to be "fictitious."  Webster's defines "fictitious" as "of, relating to, or characteristic of fiction," and further defines "fiction" as "something invented by the imagination or feigned."[17]  One

---

[13] Proposed Complaint, ¶ 10.h.  As we noted above, proposed defendant Morris declined to provide us with a response to Fox's complaint, so we have no confirmation about this, but for present purposes will assume this allegation to be true.

[14] *In re Marriage of Schiffman* (1980) 28 Cal.3d 640, 646, fn. 1, citing *In re McGehee* (1957) 147 Cal.App.2d 25, 26 (recognizing that the common law right to change one's name has never been abrogated in California); see also, Code Civ. Proc., 1279.5, subd. (a) ("Except as provided [in immaterial subdivisions], this title does not abrogate the common law right of a person to change his or her name").

[15] *In re Ross* (1937) 8 Cal.2d 608, 609; *Application of McGehee* (1956) 147 Cal. App. 2d 25, 26; *Turesky v. Superior Court, in and for Los Angeles County* (1950) 97 Cal. App. 2d 838, 840; *In re Useldinger* (1939) 35 Cal.App.2d 723, 726; see also, 83 Ops.Cal.Atty.Gen. 136 (2000) (common law change of name is valid in California); 46 Cal.Jur.3d Names § 9.

[16] *Weathers v. Superior Court* (1976) 54 Cal.App.3d 286, 288-289.

[17] Webster's Collegiate Dict. (10th ed. 1999), p. 432.)  We may look to dictionary definitions for assistance in ascertaining legislative intent.  (60 Ops.Cal.Atty.Gen. 103, 106-107 (1977); see *Smith v. Selma Community Hosp.* (2010) 188 Cal.App.4th 1, 30 [words in statutes are generally given "their usual, ordinary meaning, which in turn may be obtained by referring to a dictionary"].)

court has defined the term as "that which is not real, but imaginary."[18]  In the context of the crime of passing a "fictitious bank bill," the court defined the term as meaning "feigned; imaginary; not real; counterfeit; false; not genuine."[19]  Under the facts here and the commonly understood meaning of the term "fictitious," Morris cannot reasonably be said to have used a fictitious name in the 2016 election.

It is of no legal consequence that Morris uses her married name for some but not all purposes,[20] or that she continues to use her married name though she may no longer be married to Jeffrey Morris.  It is not uncommon, for example, that women will continue to

---

[18] *Armstrong v. Superior Court* (1956) 144 Cal.App.2d 420, 423, fn. 1.

[19] *People v. Carmona* (1926) 80 Cal.App. 159, 164; *People v. Harben* (1907) 5 Cal.App.20, 32 (same); see also *People v. Slattery* (1943) 59 Cal.App.2d 451 (in prosecution for forgery of fictitious name on checks, evidence that there was no account in bank in name of drawer and no arrangement for credit whereby bank would honor checks drawn under that name was prima facie evidence that name was fictitious); *People v. Ryan* (1925) 74 Cal.App. 125, 127-128 (re prosecution under Pen. Code section 470, subdivision (a), for forgery of a fictitious name, agreeing with defendant's contention that he could lawfully adopt a name different from that by which he is known and transact personal business in that name, so long as it is not for fraudulent purposes).

[20] As noted earlier, Fox alleges no fraudulent intent.  Fox alleges that common law procedure "requires that a person only use one name at a time."  We can find no authority to support that proposition.  Fox's reliance on *Ray v. American Photo Player Co.* (1920) 46 Cal.App. 311, 314 is unavailing.  There, the court merely made the observation that "[i]f [a man] changes his name and uses and is known by the new name in all his affairs, it becomes his legal name, and it follows that it is not then fictitious."  But the court did not purport to state a rule that a chosen name used publicly in some but not *all* affairs cannot be a legal name under common law.

5

use their maiden name in their professional status.[21]  So, too, many women continue to use their married name even after divorce.[22]

In light of the undisputed facts, proposed defendant's use of her married name "Judy Morris" for election in 2016 cannot reasonably be said to have constituted the use of a "fictitious name" for that purpose, even if she continues to use her birth name "Judy Yzquierdo" for other purposes.  There being no substantial issues of fact or law that warrant judicial resolution, it would not serve the public interest to expend scarce judicial resources on pursuing the inquiry.[23]  The application for leave to sue in quo warranto is, accordingly, DENIED.[24]

*****

---

[21] See, e.g., *Weathers v. Superior Court, supra*, 54 Cal.App.3d at pp. 288-289 [woman who used maiden name during her marriage entitled to petition for dissolution of the marriage in that name]; *United States v. El Beialy* (9th Cir. 2013) 539 Fed.Appx. 791, 795 [noting that "a woman may use her married name for social purposes and her maiden name for business or professional purposes"]; W*oodland Education Assn. v. Woodland Joint Unified School District* (2003) 27 PERC ¶ 63 [2003 WL 26067985], fn. 6 [noting that married teacher went by her maiden name during employment]; see also Moss, *Keeping Your Name After Marriage: 27 Women Talk About Why They Didn't Take Their Husband's Surnames*, Bustle (April 17, 2015), https://www.bustle.com/articles/76483-keeping-your-name-after-marriage-27-women-talk-about-why-they-didnt-take-their-husbands-surnames; Rhodan, *Women Keeping Their Maiden Names More Often, Report Finds*, Time (June 29, 2015), http://time.com/3939688/maiden-names-married-women-report/.

[22] See, e.g., Wong, *11 Arguments for Keeping your Ex's Last Name After the Divorce*, Huffington Post (July 27, 2016), https://www.huffingtonpost.com/entry/arguments-for-keeping-your-exs-last-name-after-the-divorce_us_57979798e4b02d5d5ed2f9a3.

[23] See 99 Ops.Cal.Atty.Gen. 74, 81 (2016) (similarly finding no public interest).

[24] In view our analysis, we need not address the fact that Morris has not been convicted of any violation of Elections Code section 18200, a necessary precondition to creating a vacancy in the office.  (Gov. Code, § 1770, subd. (h).)  Indeed, Fox informed us of his repeated, unsuccessful, efforts at obtaining a prosecution for violation of the statute.

6